UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JULIE LYNAE FIRZLAFF,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

Defendant.

NO: 2:14-CV-0401-TOR

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 14, 15. This matter was submitted for consideration without oral argument. The Court has reviewed the administrative record and the parties' completed briefing, and is fully informed. For the reasons discussed below, the Court grants Defendant's motion and denies Plaintiff's motion.

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

//

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under §405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The

party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

**FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. *Id.* § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. *Id.* § 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. *Id.* § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. *Id.* § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. *Id.* § 416.920(a)(4)(iii). If the impairment is as severe as or more severe than one of the enumerated impairments the Commissioner must find the claimant disabled and award benefits. *Id.* § 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, *id.* § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). *Id.* § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. *Id.* § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. *Id.* § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. *Id.* § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The burden of proof is on the claimant at steps one through four. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

**ALJ FINDINGS**

Plaintiff filed an application for supplemental security income alleging a disability onset date of December 9, 2013. Tr. 146-53. Plaintiff's claim was denied initially, Tr. 82-89, and upon reconsideration, Tr. 96-100. Plaintiff requested a hearing before an ALJ, Tr. 101, which was held on August 20, 2014, Tr. 24-38. On September 19, 2014, the ALJ rendered a decision denying Plaintiff's claim. Tr. 8-23.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 24, 2013, the application date. Tr. 13. At step two, the ALJ found that Plaintiff had the following severe impairments: chronic lymphoid leukemia, hydrocephaly at birth, and a borderline intellectual functional capacity. Tr. 13. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment. Tr. 13. The ALJ then concluded that Plaintiff had the RFC

> to perform light work as defined in 20 CFR 416.967(b) except: postural activities such as bending, stooping, crouching, kneeling can be performed no more than frequently and climbing of stair/ramp is limited to occasionally; no unprotected heights such as ropes, ladders, or scaffolds and no exposure to other hazards such as dangerous moving machinery/equipment. Mentally, she is limited to simple routine tasks and is able to maintain attention/concentration for two-hour intervals between regularly scheduled breaks. She should have only occasional changes in her work setting/routine and needs additional time (defined as 10% more than the average employee) to adapt to any of those changes, and should only be required to use judgment/decision-making on a seldom basis.

Tr. 15. At step four, the ALJ found Plaintiff is capable of performing past relevant work as fast food worker, sales clerk, and general clerk, and that this work does not require the performance of work-related activities precluded by Plaintiff's RFC. Tr. 18. On this basis, the ALJ concluded that Plaintiff was not disabled as defined in the Social Security Act. Tr. 18-19.

On November 4, 2014, the Appeals Council denied Plaintiff's request for review, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

**ISSUE**

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income under Title XVI of the Social Security Act. ECF No. 14. Plaintiff raises the following issue for this Court's review: Whether the ALJ properly considered and weighed the medical opinion evidence.

**DISCUSSION**

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted).

"Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

"Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). "In other words, an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012-13.

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray*, 554 F.3d at 1228 (internal quotation marks and brackets omitted).

**1. Dr. Veraldi**

Dr. Veraldi has not treated or examined Plaintiff, but rather, testified telephonically as a reviewing medical expert at the hearing before the ALJ. Tr. 30-33. Upon examination by the ALJ, Dr. Veraldi testified as follows:

> …She is limited to simple, routine, repetitive just by her cognitive level. But would she be more limited by that because of the very low processing speed. Dr. Quackenbush thought perhaps she would so **I think we would get up to moderate to marked in terms of concentration, persistence, and pace.**

Tr. 32-33 (emphasis added).

Noting that Dr. Veraldi's "assessment is derived specifically from the only psychological evidence of record," the ALJ assigned her opinion "significant weight," and, in regards to Plaintiff's concentration, persistence, and pace, found:

> the claimant has moderate difficulties. While her adaptive functioning was at a higher level than would be expected with her diagnosis, it was clear that cognitive deficits were present particularly in the area of processing speed.

Tr. 14-15 (emphasis added).

Plaintiff faults the ALJ for improperly evaluating the opinion of Dr. Veraldi. ECF No. 14 at 10-12. Specifically, Plaintiff argues the ALJ failed to fully incorporate Dr. Veraldi's opinion concerning concentration, persistence, and pace when fashioning the RFC. *Id.*

In response, the Commissioner argues the instant case is analogous to *Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008), because, according to the Commissioner, as in *Stubbs-Danielson*, the ALJ summarized Plaintiff's limitations and incorporated them into consistent, concrete restrictions. ECF No. 15 at 7.

The Court agrees. In *Stubbs-Danielson*, the Ninth Circuit held that "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." 539 F.3d at 1174 (citation omitted). There, the record contained some evidence of the claimant's slow pace, but the only "concrete" restriction provided by the medical sources was the recommended restriction to "simple tasks." *Id.* Consequently, the ALJ formulated a RFC that restricted the claimant to "simple, routine, repetitive sedentary work," and the Ninth Circuit held that the ALJ did not err in that formulation because it was consistent with the medical record. *Id.* at 1173-74.

Here, the Court finds the ALJ properly accounted for Dr. Veraldi's opinion when formulating the RFC, which is consistent with the medical record. When formulating the RFC the ALJ restricted Plaintiff to "simple routine tasks" and states she "is able to maintain attention/concentration for

two-hour intervals between regularly scheduled breaks." Further, the ALJ included the limitation that Plaintiff "should have only occasional changes in her work setting/routine and needs additional time (defined as 10% more than the average employee to adapt to any of those changes," and further restricted Plaintiff by requiring her to "use judgment/decision-making on a seldom basis." Tr. 15. These limitations are consistent with the restrictions identified by Dr. Veraldi, Tr. 15, and the medical evidence relied upon by Dr. Veraldi, Tr. 280 (Dr. Quackenbush's Medical Source Statement).

Nonetheless, Plaintiff further argues that the Vocational Expert ("VE") testified that a person with moderate to marked limitations in concentration, persistence and pace, as opined by Dr. Veraldi, "could not work," and thus, the ALJ erred. ECF No. 14 at 11. However, at the hearing, when answering the hypothetical question posed by Plaintiff's attorney, the VE herself defined such limitations as someone who could not keep up with the pace of work for a third to two-thirds of the workday, and subsequently, then testified that such a person could not work. Tr. 37. Importantly, Dr. Veraldi did not express such limitations. In fact, nowhere in the evidence of record is there a medical expert who opines that Plaintiff is unable to keep up with the pace of work for a third to two-thirds of the workday. Because it is not supported by the medical evidence, Plaintiff's argument unpersuasive.

Accordingly, because the RFC is consistent with the medical record, the Court concludes the ALJ accounted for Dr. Veraldi's opinion, *see* *Stubbs-Danielson*, 539 F.3d at 1173-74, and no error is found.

**2. Evaluation of Available Evidence**

Next, Plaintiff argues that Dr. Sklaroff, called as a medical expert at the hearing, did not read and consider all of her medical records. Plaintiff made note of this issue in her opening brief, *see* ECF No. 14 at 10-12, but only directly challenges this point in her reply brief, *see* ECF No. 16 at 3-5. Specifically, Plaintiff argues that two days before the August 20, 2014 hearing, she submitted additional medical evidence (Exhibit 12F), consisting of records of her care at Cancer Care Northwest dated June 12, 2014 through July 21, 2014. Tr. 314. Plaintiff asserts Dr. Sklaroff only had the exhibits up to 11F and did not review Exhibit 12 F. ECF No. 16 at 3-4.

The Court finds no error. First, the Court observes that, at the hearing, Plaintiff's counsel questioned Dr. Sklaroff as to what exhibits he had and did not object when Dr. Sklaroff testified he had up to Exhibit 11F. *See* Tr. 30. Additionally, the ALJ assigned only "some weight" to Dr. Sklaroff's assessment that Plaintiff "could perform the full range of light level work activity without additional postural or environmental limitations," and instead assigned "greater weight" to the "more restrictive opinion[s] of the State agency consultants." Tr.18.

Moreover, the assessments contained within Exhibit 12F are consistent with Dr. Sklaroff's opinion that Plaintiff can perform light level work. *See* Tr. 317, 327, 331 (stating Plaintiff is "able to carry out light or sedentary work (e.g. office work, light house work)"). Accordingly, to the extent there is error, it is harmless error. *See Molina*, 674 F.3d 1115 (explaining the general principle adhered to by the courts is that an error is harmless where it is inconsequential to the ultimate nondisability determination) (citations omitted).

Further, in her reply briefing, Plaintiff also argues that the ALJ did not consider Exhibit 12F and additional records Plaintiff submitted after the hearings. ECF No. 16 at 4-5. However, the ALJ's opinion belies Plaintiff's argument as the ALJ specifically cites to Exhibit 12F and to additional records received after the hearing. *See* Tr. 16, 17. Accordingly, no error is found.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment is **GRANTED** (ECF No. 15).
2. Plaintiff's Motion for Summary Judgment is **DENIED** (ECF No. 14).

The District Court Executive is hereby directed to file this Order, enter **Judgment for Defendant**, provide copies to counsel, and **CLOSE** the file.

**DATED** June 30, 2016.




Thomas O. Rice

THOMAS O. RICE
Chief United States District Judge